## SUNDERLAND vs. GRIFFITH.

*Sixth Judicial District Court, September, 1857.*

CONVEYANCE—HOMESTEAD.

Where A gives a deed to B, as a mortgage, and the terms of the mortgage are satisfied, and B gives a deed back to A, this second deed will be considered as a simple release of the mortgage.

The character of a homestead having by residence been once possessed upon a piece of property, no act of the husband alone can deprive the wife of the interest she has thereby acquired.

*Sunderland*, for plaintiffs.

*Clarke & Gass*, for defendant.

BOTTS, J.—The complaint in this case is a bill addressed to the equity side of the court, whilst the facts authorise only a complaint in ejectment. The difficulty is this, that whilst the plaintiff prays for certain equitable relief to which he is not entitled, because there is no need of it, he also asks in effect, though very inartificially, for a judgment which would be executed by a writ of *habere facias possessionem.* In such a case the defendant could waive a jury, and perhaps, by arguing and submitting the question to the court, he has virtually done so. Such is the inextricable confusion into which a departure from the great landmarks of the English system of special pleading, and the amalgamation of law and chancery, have led us.

In obedience, then, to the spirit and meaning of our practice act, as near as I can ascertain it, I have concluded to treat this as an action of ejectment, in which a jury has been waived, and the case has been submitted to the judgment of the court.

Upon this basis I proceed, and to my mind the evidence establishes the following facts:

On the 4th day of December, 1852, the defendant, Charles Griffith, being indebted to one Caleb Gosling, executed to the said Gosling a deed of the premises described in the complaint. This deed, although absolute on its face, was intended as a mortgage, to secure the payment of the money due from the defendant to Caleb Gosling. In this deed the wife of Griffith joined. On the 21st day of March, 1853, Caleb Gosling conveyed this property to Mary Ann Grffiith, the wife of the defendant. This conveyance was made at the request of the defendant, and with the understanding that the property was to be remortgaged to the said Caleb Gosling, after the execution of a mortgage to one Kelly. On the 23d of March, 1853, a mortgage upon this same property to secure the payment of four thousand dollars, justly due him, was executed to Caleb Gosling by Griffith and wife.

On the 20th day of May, 1854, this mortgage was satisfied, and a release entered by Caleb Gosling.

On the 23d day of October, 1854, one Joseph Gosling recovered judgment in the District Court of the Sixth Judicial District, against this defendant, Charles Griffith. On the 15th November, 1854, execution issued on this judgment, and was levied upon this property. On or about the 15th of December, 1854, the property was sold by the sheriff under, and by virtue of the levy aforesaid. At this sale the plaintiff in this action became the purchaser. He was the attorney of the plaintiff in the suit in which the judgment was obtained, under which the property was sold. At and before the sale, notice was given to the purchaser and the sheriff of the defendant's claim of a homestead. On the 15th day of June, 1855, the sheriff, (six months having expired without any offer of redemption,) conveyed the property to the plaintiff in this action. Some months after this, the judgment in Gosling vs. Griffith was fully satisfied.

As to the homestead in point of fact, I find that the property in controversy, at the time of the sale was worth about five thousand dollars; that Griffith and his wife lived on it, occupying it as a confectionery and lodging house up to November 2d, 1852, when the house was destroyed by fire; that Griffith and his wife then removed to a farm owned by him, on which he had built a dwelling house, about six miles below the city of Sacramento; that for some time they entertained the intention of returning to the city property, which had been rebuilt in a manner calculated to carry on the old business, but that they finally abandoned this intention, and the property was rented to one Sands, who occupied it for about eighteen months from March, 1853. It is alleged in the complaint, and not denied in the answer, that the defendants are in possession of the property.

The defendants now set up their claim of a homestead, in answer to the plaintiff's demand.

It is contended by the plaintiff that the deed from Griffith and wife to Caleb Gosling, and the reconveyance from Gosling to the defendant, Mary Ann Griffith, were fraudulent, and prays that they may be ordered to be delivered up and canceled. There is nothing in the testimony that warrants such a conclusion. The defendant, Charles Griffith, being justly indebted to Caleb Gosling, and being in solvent cir-

cumstances, conveyed the property in controversy to Gosling, by a deed, absolute in its terms, it is true, but one which was intended as a mortgage, and which would be treated as a mortgage, either by a court of law or a court of equity. Gosling, it appears, having confidence in the integrity and ability of the defendant, consented to release his mortgage, that a preference might be given to Kelly. To perfect this arrangement, Gosling conveys to the defendant, Mary Ann Griffith. Now what had he to convey? In truth, according to the modern doctrine, he had no estate in the land; he had only a security for the debt due from Griffith. All that the plaintiff can ask, then, is that this deed from Gosling to Griffith's wife be considered as that for which it was intended, viz: a release of the mortgage to Gosling. It shall be so considered. What then? The property is again in Griffith, free from incumbrance. Now he, his wife joining, mortgages it honestly and *bona fide* to Kelly and Gosling. The debt to Gosling is discharged, and the mortgage released. Then Jos. Gosling obtains a judgment against Griffith, levies it upon the property, and sells it under his execution. The plaintiff becomes the purchaser, and now sues upon his sheriff's deed.

Thus considered, the case presents the single question, had there been such a dedication of this property as to consecrate it as a homestead for the defendants? I think this character had been stamped upon it. They lived upon it and made it their home up to the time of the fire, in November, 1852. The Supreme Court has declared that residence is the test of dedication. See Cook vs. McChristian, 4 Cal. R., 23; Taylor vs. Hargous, 4 Cal. R., 268, and Reynolds vs. Pixley, 6 Cal., April T. It is true that the defendant, Griffith, although he rebuilt the house after the fire, never again made it his residence, but the Supreme Court has decided that the character of a homestead, having by residence been once possessed upon a piece of property, no act of the husband alone can deprive the wife of the interest she has thereby acquired. This interest can only be destroyed by the deed of the wife, made under the sanction of a privy examination. See Taylor vs. Hargous, and Revalk vs. Kramer; 7 Cal., July T.

Holding this property, as I am prepared to do, as the homestead of the defendants, it becomes unnecessary, as far as the merits of the controversy are concerned, to pass upon another question raised by the

defendants. As a general rule I am satisfied to confine my decision to a point that will settle the issue made by the pleadings. But. in this case, it is due to the plaintiff that the point raised by the defendants should be passed on. They contend that the plaintiff, having been the attorney of the judgment creditor in the prosecution of the suit under which he purchased, his purchase is fraudulent and void. As to actual fraud upon the part of the plaintiff, there is not the slightest ground for the charge. Nor did the defendant probably intend to make it. Neither do they state the rule properly on this subject. No trustee or agent can retain the benefit of a purchase at a sale made under his direction, against the will of his principal. This would be, to be the seller and purchaser too. His principal can have the sale annulled, or he can affirm it, at his option. Gosling, the creditor, seems to have been perfectly satisfied with the conduct of his attorney, and he is responsible to nobody else.

Under the facts of this case, I find, as matter of law, that the defendants are entitled to judgment. Let judgment be entered accordingly.